# In the United States Court of Federal Claims

No. 20-1384C

(E-Filed:   July 1, 2022)

| | |
|---|---|
| AUDIO EVOLUTION DIAGNOSTICS, INC. | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| GLOBALMEDIA GROUP, LLC | ) |
| | ) |
| Third-party Defendant. | ) |
| | ) |

Motion to Dismiss; RCFC 12(b)(1); RCFC 12(b)(6); 35 U.S.C. § 101; Patent-Eligible Subject Matter; Abstract Idea; Inventive Concept.

Joel B. Rothman, Boca Raton, FL, for plaintiff.

Grant D. Johnson, Trial Attorney, with whom were Brian Boynton, Acting Assistant Attorney General, Gary L. Hausken, Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant.   Scott Bolden, of counsel.

Brett W. Johnson, Phoenix, AZ, for third-party defendant.

<u>OPINION</u>

CAMPBELL-SMITH, Judge.

Before the court is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).   See ECF

No. 47.   Defendant filed its motion on December 3, 2021, in which third-party defendant joined, see ECF No. 48, and plaintiff filed its response on January 24, 2022, see ECF No. 51.   Defendant filed a reply on February 7, 2022, see ECF No. 52, in which third-party defendant also joined, see ECF No. 53.   The motion is now fully briefed and ripe for decision.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.   For the following reasons, defendant's motion to dismiss is **GRANTED**.

I.      Background[1]

A.      The Patents

At issue in this case are United States Patent Number 8,920,343, entitled "Apparatus for Acquiring and Processing of Physiological Auditory Signals" (the "'343 Patent"), and United States Patent Number 8,870,791, entitled "Apparatus for Acquiring, Processing and Transmitting Physiological Sounds" (the "'791 Patent").   See ECF No. 42 at 1, 3 (second amended complaint).

Both the '343 Patent and the '791 Patent describe and claim "an apparatus and system . . . for collecting, processing, and recording sounds associated with the physiologic activities of various human organs."   ECF No. 42 at 2; see also ECF No. 42-5 at 50 ('343 Patent describing the invention as the "digital recording, processing and analysis of . . . physiologic sounds").   To do so, the system utilizes one or more transducers, which are placed on the body and detect the organ sounds as analog data signals.   See ECF No. 42 at 2.   The analog data signals are then converted to digital signals by a converter, and the digital signals are transmitted to an electronic apparatus (e.g., a computer workstation) that processes, views, and analyzes the data through an analysis program.   See id.   The data is displayed on a "compact, customizable device" that uses "a simple interface" to allow medical professionals with limited knowledge of technology to analyze and manipulate the data.   ECF No. 42-5 at 50; see also ECF No. 42-7 at 48 ('791 Patent).   The object of the apparatus described in the patents is "facilitating the diagnosis of certain diseases" using the analyzed data, ECF No. 42-5 at 50, thereby "dramatically improv[ing] efficiency in the healthcare system and clinical outcomes for patients," id. at 51.

---

[1]      The facts are taken from plaintiff's second amended complaint and are undisputed by defendant in its motion to dismiss.   The court makes no findings of fact here.

The inventions described in the '343 Patent and the '791 Patent purport to improve on other, similar devices in a number of ways.   See ECF No. 42 at 4 ("The technology field for acquiring, processing, and transmitting physiological organ sounds experienced disadvantages by March 23, 2006, that the invention disclosed and claimed in the Asserted Patents overcame.").   The patents purport to describe a device that is more useful to physicians of "ordinary ability" working in a clinical setting.   Id. at 4-5 (describing the disadvantages of other systems available prior to the system at issue here to physicians of "ordinary ability").   According to plaintiff, the device does so by "providing a simple interface which allows medical professionals with limited technical background to easily manipulate vital parameters . . ., and applying data windows without the need for computer programming knowledge."   ECF No. 42-5 at 50.

Additionally, the '343 Patent and the '791 Patent claim to "boost the accuracy" of the recorded physiological sounds by taking additional measures to prevent extraneous sounds from influencing the analysis of the physiological sounds collected.   ECF No. 42 at 10; see also ECF No. 42-5 at 50 ("Another object of this invention is to boost the accuracy of recording physiological sounds by providing the physician with an efficient method of eliminating background noise . . . from the desired signal in real time.").   Plaintiff claims that this is done, at least in part, through the use of a "parallel to serial converter," which converts the physiological sounds collected "from and to" the analog data signals.   ECF No. 42 at 10 (referring to portions of the patent describing the "parallel to serial converter" and "serial to parallel converter" as support for the patents' goal of boosting the accuracy of physiological sounds by eliminating background noise).

B.      Plaintiff's Claims of Infringement

The specific claims at issue in this case are independent claim 39 of the '343 Patent and independent claim 17 of the '791 Patent.   See ECF No. 42 at 33-34.   Claim 39 reads as follows:

An apparatus for acquiring and processing physiological sounds comprising:

a plurality of sensors each respectively comprising a corresponding diaphragm, wherein at least one sensor is configured to be positioned on a body surface, and at least two sensors of said plurality of sensors are configured to convert said physiological sounds, in response to vibration of said corresponding diaphragms by said physiological sounds, into a corresponding plurality of electrical signals; and

processing unit operatively coupled to said plurality of sensors[,] said processing unit configured to process a plurality of streams of digital data representative of said corresponding plurality of electrical signals, wherein

3

at least a portion of said plurality of streams of digital data are input into a parallel to serial converter to generate a serial output.

ECF No. 42-5 at 56 (alteration pursuant to the Certificate of Correction, id. at 60).   And Claim 17 of the '791 Patent reads:

An apparatus for acquiring, processing and transmitting physiological sounds comprising:

a plurality of sensors each respectively comprising a corresponding diaphragm, wherein at least one corresponding diaphragm is configured to be positioned on a body surface, and at least two sensors of said plurality of sensors are configured to convert said physiological sounds, in response to vibration of said corresponding diaphragms by said physiological sounds, into a corresponding plurality of electrical signals;

a corresponding plurality of analogue to digital converters each operatively coupled to a corresponding one sensor of said plurality of sensors, said analogue to digital converters configured to convert at least a portion of said plurality of electrical signals into a plurality of streams of digital data;

a processing unit operatively coupled to the plurality of analogue to digital converters, said processing unit configured to process said plurality of streams of digital data, wherein at least a portion of said plurality of streams of digital data are input in parallel into a parallel to serial converter to generate a serial output; and

a wireless network device configured for wireless transmission of at least a portion of said serial output in a first direction away from said processing unit, and said wireless network device is further configured for reception of an input that is wirelessly transmitted in a second direction towards said processing unit.

ECF No. 42-7 at 54.

According to plaintiff, defendant has used certain accused products "manufactured by or for [d]efendant" by GlobalMed and Iron Bow.   See ECF No. 42 at 27-28. Plaintiff includes an extensive list of telemedicine stations, stethoscopes, cameras, probes, and system software manufactured by the two companies.   See id.   Plaintiff

further provides a table of specific "illustrative" examples of the infringement, which the court has condensed and reproduced below[2]:

| Accused Product(s) | Infringing Agency(ies)/ Government Actor(s) | Infringement Location(s) | Date(s) of Infringement |
|---|---|---|---|
| GlobalMed Clinical Access Station ("CAS"), ClearSteth electronic stethoscope ("USB Chest Piece"), and eNCounter software with ClearSteth Module | Naval Medical Logistics Command, Fort Detrick, MD | U.S. Naval Medical Center Portsmouth, VA  U.S. Naval Hospital Guantanamo Bay, Cuba;  Naval Branch Health Clinic Bahrain;  Naval Hospital Jacksonville, FL;  Navy Branch Medical Clinic, Albany, GA  Navy Branch Medical Clinic, China Lake, CA | 12/8/2017 to 12/8/2018 for Naval Medical Center Portsmouth, VA  12/8/2017 to 12/8/2018 for Naval Hospital Jacksonville, FL |
| GlobalMed Transportable Exam Station ("TES"), ClearSteth electronic Stethoscope ("USB Chest Piece"), and eNCounter software with ClearSteth Module | Naval Medical Logistics Command, Fort Detrick, MD | Naval Health Clinic Annapolis, MD  Naval Medical Center Portsmouth, VA  U.S. Naval Hospital Sigonella, Sicily, Italy | 12/31/2019 to 12/31/2020 |

---

[2]    For purposes of evaluating defendant's motion the court has partially reproduced the above table, contained in plaintiff's complaint.   The table has been altered to omit internal citations and to omit two columns of information that were not pertinent to the issues raised in defendant's motion.   See ECF No. 42 at 28.

| GlobalMed i8500, electronic stethoscope (CareTone Ultra or StethOne streaming); and

Capsure Vista software | Department of Veteran's Affairs | VA Rocky Mountain Network, 4100 E. Mississippi Ave., Suite 1100 Glendale, CO 80246 | October 2009 to Present |
|---|---|---|---|
| GlobalMed i8500, electronic stethoscope (CareTone); and

eNcounter software | Department of Veteran's Affairs | Ernest Childers VA Outpatient Clinic, 9322 E 41st St. Tulsa, OK 74145 | 04/14/2018 |
| GlobalMed Clinical Access Station | Department of Veteran's Affairs | Oklahoma City VA Medical Center, 921 NE 13th St, Oklahoma City, OK 73104 | 09/10/2020 |
| GlobalMed Clinical Access Station ("CAS") and Transportable Exam Station,

ClearSteth electronic stethoscope ("USB Chest Piece"); and

eNCounter software. | White House Medical Unit and Department of Veteran's Affairs | The White House, Roosevelt Room, 1600 Pennsylvania Avenue NW, Washington, DC 20500 | 08/03/2017 |
| GlobalMed i8500,

CareTone Ultra Telephonic Stethoscope, and

eNCounter software | Department of Veteran's Affairs | New Albany VA Clinic, 4347 Security Pkwy, New Albany, IN 47150 | 08/09/2017 |

Id. at 28-33 (condensed and internal citations omitted).

C.      The Prosecution History of the Patents

Dr. Michael Edward Sabatino, M.D., the named inventor of the patents and the president, CEO, and ninety-percent owner of plaintiff, filed the provisional application for the patents with the United States Patent and Trademark Office (PTO) on March 23, 2006.   See id. at 2-3 (citing ECF No. 42-1, Provisional Application for Patent).   On November 20, 2006, Dr. Sabatino filed the non-provisional application for the '343 patent.   See id. at 3 (citing ECF No. 42-2, patent application).   Before the PTO acted on the non-provisional application for the '343 Patent, on March 26, 2012, Dr. Sabatino filed the non-provisional application for the '791 Patent.   See id. (citing ECF No. 42-4, patent application).   The non-provisional application for the '791 Patent noted that it was a continuation of the non-provisional application for the '343 Patent.   See id.

The PTO examined the patent applications for more than eight years and ultimately issued the '791 Patent on October 28, 2014, and the '343 Patent on December 30, 2014.   See id.   Both patents were issued to Dr. Sabatino.   See id.   On April 19, 2016, Dr. Sabatino assigned the '343 Patent and the '791 Patent to plaintiff pursuant to an assignment agreement.   See id. at 4; see also ECF No. 47-1 at 418-20 (agreement).   On August 27, 2020, plaintiff and Dr. Sabatino executed a new assignment agreement that expressly revoked the 2016 agreement and granted plaintiff "all right, title and interest in the Patents, including the right to sue for all past, present, and future infringement since the date of issue of the Patents."   ECF No. 47-1 at 422.

D.      Procedural History

Plaintiff filed its original complaint on October 13, 2020, alleging patent infringement by the United States Department of Veterans Affairs (VA),[3] the Department of Defense (DOD), and the Department of the Navy.   See ECF No. 1.   Defendant moved to dismiss plaintiff's complaint on December 14, 2020, arguing that plaintiff's claims should be dismissed for failure to state a claim because plaintiff's asserted patents are "ineligible for protection under 35 U.S.C. § 101" as abstract ideas.   ECF No. 9 at 6.   Defendant also argued that "several other categories" of plaintiff's claims should be dismissed for lack of jurisdiction.   Id. at 6-7.   In response, plaintiff moved to amend its complaint to "address[] the issues raised in the defendant's motion to dismiss."   ECF No. 18 at 1.   The court granted plaintiff's motion, see ECF No. 25 (order), and plaintiff filed

---

[3]      Plaintiff refers to the "Veterans Administration" in its complaint, see ECF No. 1 at 2, and the operative second amended complaint, see ECF No. 42 at 2.   The court understands plaintiff to be referring to the Department of Veterans Affairs, as evidenced by plaintiff's referral to that agency elsewhere in its second amended complaint.   See ECF No. 42 at 30-32 (listing the "infringing agency" as "Department of Veteran's Affairs").

its first amended complaint on February 24, 2021, <u>see</u> ECF No. 26 (first amended complaint).

Defendant moved to dismiss plaintiff's amended complaint, arguing as it had in its first motion to dismiss, that plaintiff's claims are not eligible for patent protection and should therefore be dismissed.  <u>See</u> ECF No. 27 at 6.  Defendant also again raised jurisdictional arguments to several components of plaintiff's claims.  <u>See id.</u> at 7.  In its motion, defendant noted that plaintiff's amended complaint failed to include "any specific examples of [defendant's] use of the accused products."  <u>Id.</u> at 43.  After briefing on defendant's motion was complete, the court ordered plaintiff to file a more definite statement of its claim pursuant to RCFC 12(e) in the form of a second amended complaint.  <u>See</u> ECF No. 41 at 2-3 (order).  Specifically, the court ordered plaintiff to provide additional detail regarding the "specific dates and locations of the alleged infringement," and "a comprehensive list of the specific agencies or government actors who committed the alleged acts of infringement," so that it can assess the jurisdictional issues raised by defendant, which must be considered before the court can reach the merits of the case.  <u>Id.</u>  The court consequently denied defendant's second motion to dismiss as moot.  <u>See id.</u> at 3.

On November 5, 2021, plaintiff filed its second amended complaint (complaint). <u>See</u> ECF No. 42.  In response, defendant filed the motion to dismiss currently before the court, again arguing that plaintiff's claims should be dismissed because they are "ineligible for patent protection under 35 U.S.C. § 101," and that the court lacks jurisdiction over "many of [p]laintiff's infringement allegations."  ECF No. 47 at 7-8.

II.    Legal Standards

A.    Motions to Dismiss Pursuant to RCFC 12(b)(1)

When a challenge is mounted pursuant to RCFC 12(b)(1), plaintiff bears the burden of establishing this court's subject-matter jurisdiction by a preponderance of the evidence.  <u>See</u> <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988); <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  In reviewing plaintiff's allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiff's favor. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982); <u>Reynolds</u>, 846 F.2d at 747 (citations omitted). If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute."  <u>Reynolds</u>, 846 F.2d at 747.  If the court determines that it lacks subject-matter jurisdiction, it must dismiss the complaint.  <u>See</u> RCFC 12(h)(3).

8

B.     Motions to Dismiss Pursuant to RCFC 12(b)(6)

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff."  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).   It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   This requires "more than a sheer possibility that a defendant has acted unlawfully," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.; see also Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (the court is "not required to accept the asserted legal conclusions" in a plaintiff's complaint when assessing a motion to dismiss).

In evaluating a motion to dismiss for failure to state a claim, the court "primarily consider[s] the allegations in the complaint," but is "not limited to the four corners of the complaint," and may also look to the "matters incorporated by reference or integral to the claim."  See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citations omitted); see also Terry v. United States, 103 Fed. Cl. 645, 652 (2012) (finding that the court may consider the allegations contained in the complaint, exhibits attached to the complaint, public records of which the court may take judicial notice, and documents appended to the motion to dismiss that are central to plaintiff's complaint).

III.    Analysis

A.     This Court Has Jurisdiction Over All of Plaintiff's Claims

Jurisdiction is a threshold issue that the court must consider before reaching the merits of a case.   See OTI Am., Inc. v. United States, 68 Fed. Cl. 108, 113 (2005) ("Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998)).   Accordingly, the court first addresses defendant's argument that it lacks jurisdiction over certain of plaintiff's claims.   See id.; see also ECF No. 47 at 5.   Defendant contends that:   (1) the Assignment of Claims Act (ACA), 31 U.S.C. § 3727, "divests this [c]ourt of jurisdiction" over those claims that arose prior to the patents being assigned to plaintiff in April 2016; (2) the court does not have jurisdiction over those claims that arose outside of the United States; and (3) any of the claims involving accused products that were manufactured or sold by AMD Global

9

Telemedicine are precluded as a matter of law because plaintiff has already raised and settled infringement claims against that entity.   Id.; see also id. at 41-44.

Plaintiff responds that the court has jurisdiction over all claims asserted in the complaint, including those that pre-date the assignment of the patents and that involve products manufactured in the United States and later shipped out of the United States. See ECF No. 51 at 42-43.   Plaintiff further contends that its claims do not involve products manufactured by AMD Global Telemedicine and, accordingly, defendant's preclusion argument is misplaced.   See id. at 44.

i.      The Assignment of Claims Act

The ACA, prohibits the assignment of a claim against the United States unless the claim "is allowed," the amount is decided, and "a warrant for payment of the claim has been issued."   31 U.S.C. § 3727(b).   The statute applies to the assignment of patent claims "with respect to the right to recover for past infringements of the patent."   MDS Assoc., Ltd. v. United States, 31 Fed. Cl. 389, 393 (1994).   "Congress intended that the government would only be subject to claims from the 'original claimant,' such that unliquidated claims could not be assigned after they had accrued."   3rd Eye Surveillance, LLC v. United States, 133 Fed. Cl. 273, 277-78 (2017) (citing United States v. Shannon, 342 U.S. 288, 291 (1952)).   Thus, "voluntary assignments of patent claims are ineffective against the government unless they qualify for one of the[] judicially-recognized exceptions or otherwise do not run afoul of the purposes of the Act."   Id. at 277.   The court has previously held that where assignments are to an "alter-ego partnership" and "the same individual or partners possessed the equitable ownership of the claims for purposes of infringement," MDS Assocs, 31 Fed. Cl. at 394, the ACA is not applicable because "none of the Act's purposes were implicated" in the assignment, Ideal Innovations, Inc. v. United States, 138 Fed. Cl. 244, 251 (2018) (holding that the ACA was not implicated where the inventor was also the president and CEO of the plaintiff company).

Defendant argues that Dr. Sabatino did not assign plaintiff the right to sue for past infringement until the August 27, 2020 agreement, "and there is nothing to suggest that any of the judicially recognized exceptions" to the ACA applies.   ECF No. 47 at 43. Defendant therefore contends that the court lacks jurisdiction over any of plaintiff's infringement claims that occurred prior the 2016 assignment agreement.   See id. at 42-43.   Plaintiff responds that Dr. Sabatino is "a 90% owner of [plaintiff] and is its president and CEO," making him the alter-ego of plaintiff.   ECF No. 51 at 42. According to plaintiff, as the alter-ego, Dr. Sabatino "maintains the same or similar equity interest in the claims . . . as he did before the assignment," meaning the assignment does not implicate the ACA.   Id. (citing Kingan & Co. v. United States, 44 F.2d 447, 451 (Ct. Cl. 1930).

10

In evaluating defendant's motion, the court presumes all undisputed facts are true and construes all reasonable inferences in plaintiff's favor if jurisdictional facts are not challenged.   See Scheuer, 416 U.S. at 236.   The facts related to the ownership interests of plaintiff are of importance to the court's determination regarding the application of the ACA.   Defendant, however, has neither specifically challenged—nor presented any evidence to contradict—plaintiff's assertion in its complaint that Dr. Sabatino owns a ninety-percent interest in plaintiff.   See ECF No. 47 at 41-43; ECF No. 52 (jurisdictional arguments not addressed in defendant's reply); see also ECF No. 42 at 2; ECF No. 51 at 42.   The court therefore must take plaintiff's assertion as true.

Plaintiff has presented sufficient, unchallenged allegations that Dr. Sabatino, as the ninety-percent owner, president, and CEO of plaintiff, is "essentially the same claimant[]" as plaintiff.   Ideal Innovations, 138 Fed. Cl. at 251 (holding that an inventor who was also the president and CEO of the plaintiff was "effectively . . . the same" as plaintiff and "essentially the same claimant").   As such, and taking as true plaintiff's allegation that the equitable ownership of the claims has remained with Dr. Sabatino as ninety-percent owner of plaintiff, the purposes of the ACA are not implicated in the assignment of the patents.   See MDS Assocs., 31 Fed. Cl. at 394.   Because the ACA is not implicated in this case, defendant's motion to dismiss plaintiff's claims arising prior to April 19, 2016, is denied.

ii.   Claims Arising Outside the United States

Defendant next argues that plaintiff's claims arising outside the United States must be dismissed for lack of jurisdiction pursuant to the plain language of 28 U.S.C. § 1498(c), which provides that patent claims against the United States do not extend to "'any claim arising in a foreign country.'"   ECF No. 47 at 43 (quoting 28 U.S.C. § 1498(c)).   Plaintiff responds that its allegations relate to the use or manufacture of the infringing products in the United States prior to their use outside of the United States. See ECF No. 51 at 43.   According to plaintiff, while an invention "may be shipped outside the U.S. for the government's use . . . liability remains for the unauthorized manufacture of the patented invention in the U.S. before the export."   Id. (citing Zoltek Corp. v. United States, 672 F.3d 1309, 1325 (Fed. Cir. 2012)).

The United States Court of Appeals for the Federal Circuit held that "§ 1498(c) has no application" where "a United States patent was allegedly infringed by activities that took place within the United States."   Zoltek, 672 F.3d at 1327.   Because defendant does not challenge the jurisdictional facts, the court presumes all undisputed facts are true and construes all reasonable inferences in plaintiff's favor.   See Scheuer, 416 U.S. at 236.   Plaintiff does not specifically allege that the accused products were manufactured in the United States, but does allege that the products were manufactured "by or for [d]efendant."   ECF No. 42 at 27.   Drawing all inferences in favor of plaintiff, the court

11

credits plaintiff's assertion in its response that the infringing products were manufactured in the United States although they were ultimately used in foreign countries.   See ECF No. 51 at 43; ECF No. 42 at 27-28, 33-34; see also id. at 28-33 (listing "infringing locations").   In the court's view, plaintiff's allegations related to the manufacture of infringing products in the United States are sufficient to establish this court's jurisdiction despite the final location of the use of the products.   See Zoltek, 672 F.3d at 1327; see also ECF No. 51 at 43; ECF No. 42 at 27-28, 33-34.   Defendant's motion to dismiss plaintiff's claims involving products used outside the United States is therefore denied.

    iii. Claims Involving AMD Global Telemedicine

   Finally, defendant contends that "any claims that involve accused products that were manufactured and/or sold by AMD Global Telemedicine [(AMD)] are precluded as a matter of law."   ECF No. 47 at 44.   This is so, according to defendant, because plaintiff had previously filed a suit against AMD and that case was dismissed with prejudice.   See id.   Plaintiff responds that while this may be true, its complaint "does not accuse [defendant] of using AMD telemedicine systems."   ECF No. 51 at 44. According to plaintiff, the accused systems "include some products" that AMD also sells, but AMD neither manufactures those products nor sells them to defendant or to the two companies from which defendant bought the products at issue.   Id.

   Defendant offers no more than bare assertions that the accused products in this case are manufactured by AMD and that AMD sold the products at issue to defendant. See ECF No. 47 at 44.   On its face, plaintiff's complaint involves only products manufactured or sold by GlobalMed and Iron Bow Products.   Without more, and presuming all undisputed facts are true and construing all reasonable inferences in plaintiff's favor, see Scheuer, 416 U.S. at 236, the court agrees with plaintiff that "the products are properly accused in this action," ECF No. 51 at 44.   Defendant's motion as to claims involving AMD products must be denied.

   Accordingly, the court has jurisdiction over all of plaintiff's claims.

   B. Plaintiff's Claims Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

   Defendant argues that plaintiff's complaint should be dismissed in its entirety pursuant to RCFC 12(b)(6) because plaintiff cannot state any claim since the patents at issue are not entitled to patent protection under 35 U.S.C. § 101.   See ECF No. 47 at 23-41.   Plaintiff responds that the asserted patents "are not directed to any patent ineligible concepts, but rather are directed to non-abstract telemedicine systems," ECF No. 51 at 28 (capitalization removed), and its claims require claim construction prior to a decision on eligibility, see id. at 33.

Case 1:20-cv-01384-PEC   Document 54   Filed 07/01/22   Page 13 of 19

i.      Determining Patent Eligibility on a Motion to Dismiss

"Patent eligibility under § 101 is a question of law that may involve underlying questions of fact."   Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1358-59 (Fed. Cir. 2020) (citing Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335, 1342 (Fed. Cir. 2018); see also Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co., 916 F.3d 1363, 1367 (Fed. Cir. 2019) (stating that "[e]ligibility is a question of law based on underlying facts").   "[W]hether the claim 'supplies an inventive concept that renders [it] 'significantly more' than an abstract idea to which it is directed is a question of law.'" Simio, 983 F.3d at 1363 (quoting BSG Tech. LLC v. BuySeasons, Inc., 899 F.3d 1281, 1290 (Fed. Cir. 2018)).   And, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry."[4]   Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed. Cir. 2018).   The court may, therefore, determine patent eligibility on a motion to dismiss pursuant to RCFC 12(b)(6) only "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."   Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018); see also Univ. of Fla., 916 F.3d at 1369 (affirming dismissal of infringement claims where patents were found to be ineligible under § 101).

ii.      Determining Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."   35 U.S.C. § 101.   "'Laws of nature, natural phenomena, and abstract ideas,'" however, are not eligible for patent protection.   Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208, 216 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013)).   This is so because these areas comprise "the basic tools of scientific and technological work" and protecting them

---

[4]      Plaintiff argues that defendant "failed to present clear and convincing evidence sufficient to show the Asserted Paten[t]s are ineligible for patent protection."   ECF No. 51 at 31.   Plaintiff also contends that the motion should be denied because "[f]actual determinations will be needed to decide the eligibility issue."   Id.   The court notes that while plaintiff is correct that factual issues related to a patent's validity must be proven by clear and convincing evidence, see Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed. Cir. 2018), the court does not resolve any factual disputes on a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims.   Instead, if a factual allegation arises that, taken as true, would prevent the court from resolving the eligibility determination, the court cannot, as a matter of law, grant a motion to dismiss.   Defendant, therefore, need not present any clear and convincing evidence to the court at this stage of the case.   The court will, however, consider whether any factual issues exist that may prevent the court from granting a motion to dismiss, as required by the rules and the case law.

under the patent system "might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws."   Id. (internal citations and quotation marks omitted).

The Supreme Court of the United States has therefore established a two-part test for evaluating claims for patent-eligible subject matter.   See id. at 217.   First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts."   Id. at 218 (citing Mayo Collaborative Servs. V. Prometheus Lab'ys, Inc., 566 U.S. 66, 75-78 (2012)).   The inquiry in this step "look[s] at the 'focus' of the claims." Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).   If the court concludes that the patents at issue are directed toward ineligible subject matter, then the court must determine whether the application contains an inventive concept.   See Alice, 573 U.S. at 217.    It does so by "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."   Alice, 573 U.S. at 217 (quoting Mayo, 566 U.S. at 78, 79).

iii.    Plaintiff's Claims Are Directed to an Abstract Idea

The court must first consider the asserted patent claims "'in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.'" ChargePoint, Inc. v. Semaconnect, Inc., 920 F.3d 759, 765 (Fed. Cir. 2019) (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)). The court "ask[s] what the patent asserts to be the focus of the claimed advance over the prior art to determine whether the claim's character as a whole is directed to ineligible subject matter."   Simio, 983 F.3d at 1359 (citations and quotation marks omitted).

Defendant contends that the asserted claims of the '343 Patent and the '791 Patent are directed to the "abstract idea of collecting, processing, and displaying sound data from the human body," and are therefore ineligible for patent.   ECF No. 47 at 23. Defendant asserts that the abstract focus "is evident from the asserted patents' disclosures," id. at 25, and "the language of the asserted patent claims themselves," id. at 26; see also id. at 26-28 (detailing the claims in plaintiff's complaint that defendant argues "further highlight[]" the abstract idea).   According to defendant, the data is "collected, processed, and displayed using conventional hardware and software," making it "precisely the type of patent claim that the Federal Circuit has consistently held to be directed to an abstract idea."   Id. at 24; see also id. at 28-33 (arguing that the specifications and prosecution histories of the patents "concede" that they are "generic computer components performing their conventional functions to carry out that abstract idea"); id. at 34-35 (collecting cases in which the Federal Circuit has found claims for collecting, analyzing, and manipulating data and to be directed to an abstract idea).   And,

14

defendant contends, plaintiff's allegations would result in exactly the sort of preemption that raised the Supreme Court's concern about the patenting of abstract ideas.   See id. at 33-34.

According to plaintiff, however, its patented system is "directed to non-abstract telemedicine systems" for "use in patient treatment and diagnosis," and overcame "the inability of [prior inventions] to provide accurate, robust, flexible, easy-to-use and easy-to-modify systems."   ECF No. 51 at 28 (capitalization removed).   Plaintiff argues that when comparing "traditional physical examination by auscultation,"[5] with plaintiff's patented technology, "the fallacy of [defendant's] argument" that the patent is directed at an abstract idea is "laid bare."   Id. at 29.   Plaintiff lists, in a table, the traditional physical examination procedures and "examples of examination by auscultation" using the system claimed in the asserted patents for each of the terms "collecting," "processing," "analyzing," and "displaying."   Id. at 29-30 (capitalization removed). Plaintiff further contends that "preemption is not an issue," because defendant "is misreading and misunderstanding the asserted patents."   Id. at 35 (capitalization removed).   According to plaintiff, "[i]nfringement is limited to specific accused devices in combination that meet all the claimed limitations."   Id. at 36 (emphasis in original).

In a recent decision, the Federal Circuit addressed patent allegations similar to those brought by plaintiff here.   See CardioNet, LLC v. InfoBionic, Inc., No. 2020-2123, 2020-2150, 2021 WL 5024388, at *3-4 (Fed. Cir. Oct. 29, 2021).   In CardioNet, the Circuit reviewed a patent for a heart monitoring device that filtered certain heart wave data to improve resolution.   See id. at *1-2.   Plaintiff argued that its invention was directed to "an improvement in cardiac monitoring technology," rather than the abstract idea of filtering data.   See id. at *3.   The Circuit disagreed, holding that "the claim language and specification make clear [that] the invention is directed to the abstract idea of filtering patient heartbeat signals to increase accuracy."   Id. at *4.   In another similar case, the Circuit held that an invention automating by computer the collection of data from various health monitoring systems was "directed to the abstract idea of collecting, analyzing, manipulating, and displaying data."   Univ. of Fla., 916 F.3d at 1368.

In the court's view, at their core, plaintiff's asserted patents are directed to the abstract idea of collecting, analyzing, and displaying data.   As in CardioNet and University of Florida, the invention at issue here is a physical monitoring and data collection device that collects and filters human physiological data and then displays it for a clinician to review.   See ECF No. 42 at 2-3; ECF No. 42-5 at 50; ECF No. 42-7 at 48; see also CardioNet, 2021 WL 5024388, at *3-4; Univ. of Fla., 916 F.3d at 1368.

---

[5]     According to plaintiff, auscultation "is listening to the sounds of the body during a physical examination" to evaluate "frequency, intensity, duration, number [and] quality."   ECF No. 51 at 8 n.1 (capitalization removed).

Plaintiff describes the asserted patents as a "novel apparatus and system . . . for collecting, processing, and recording sounds associated with the physiologic activities of various human organs."   ECF No. 42 at 2.   And, the patents themselves describe the invention as the "digital recording, processing and analysis of . . . physiologic sounds." ECF No. 42-5 at 50.

Plaintiff further claims that the advance over the prior art is that the device collects data and "provid[es] a simple interface which allows medical professionals with limited technical background to easily manipulate vital parameters . . ., and apply[] data windows without the need for computer programming knowledge."   ECF No. 42 at 6; ECF No. 42-5 at 50.   Additionally, the '343 Patent and the '791 Patent claim to "boost the accuracy" of the recorded physiological sounds by taking additional measures to prevent extraneous sounds from influencing the analysis of the physiological sounds collected. ECF No. 42 at 10; see also ECF No. 42-5 at 50 ("Another object of this invention is to boost the accuracy of recording physiological sounds by providing the physician with an efficient method of eliminating background noise . . . from the desired signal in real time.").

The court thus agrees with defendant that the patents describe a system that "collect[s], processe[s], and display[s] [data] using conventional hardware and software," making it "precisely the type of patent claim that the Federal Circuit has consistently held to be directed to an abstract idea."   ECF No. 47 at 24; see also CardioNet, 2021 WL 5024388, at *3-4; Univ. of Fla., 916 F.3d at 1368.   Reviewing plaintiff's allegations, along with the patents, plaintiff has not articulated a clear description of its patents that would permit the court to find otherwise.   Plaintiff also does not present, and the court cannot discern, any factual dispute that prevents the court from making this determination.   Aatrix Software, 882 F.3d at 1125.   The facts regarding the "character as a whole" of the asserted patents are clear and undisputed.   ChargePoint, 920 F.3d at 765; see also, e.g., ECF No. 42 at 2-3 (plaintiff describing the asserted patents); ECF No. 47 at 16-19 (defendant describing the asserted patents by quoting and citing to the patents themselves).   The court must find, therefore, as the Federal Circuit did in CardioNet and University of Florida, that plaintiff's asserted patents are directed at the abstract idea of "collecting, analyzing, manipulating, and displaying data," Univ. of Fla., 916 F.3d at 1368, and "filtering patient [physical] signals to increase accuracy," CardioNet, 2021 WL 5024388, at *4.

iv.   Plaintiff's Claims Lack an Inventive Concept

If the court finds that a patent is directed at ineligible subject matter, the court next looks for an "inventive concept," defined as "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more" than a patent on the abstract idea itself.   Alice, 573 U.S. at 217-18; see also id. at 221 (noting

that the "transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it'") (internal quotation marks and citation omitted); Mayo, 566 U.S. at 82 ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable.").   Inventive concepts "must be more than 'well-understood, routine, conventional activity.'"   Affinity Labs of Texas, LLC v. DirecTV, LLC, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (quoting Mayo, 566 U.S. at 79); see also Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1316 (Fed. Cir. 2019) ("An inventive concept reflects something more than the application of an abstract idea using well-understood, routine, and conventional activities previously known to the industry.") (internal quotation marks and citations omitted).   "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."   BSG Tech, 899 F.3d at 1290-91.

Determining whether a claim contains an inventive concept "may turn on underlying questions of fact."   Cellspin, 927 F.3d at 1315 (internal quotation marks and citation omitted).   The court must accept plaintiff's factual allegations as true, and where plaintiff asserts "plausible and specific factual allegations that aspects of the claim are inventive," those allegations are sufficient survive a motion to dismiss.   Id. at 1317.   In Cellspin, the Circuit considered plaintiff's claim of inventiveness and determined that plaintiff made "specific, plausible factual allegations" that were "more than simply label[ing] . . . techniques as inventive," and "pointed to evidence suggesting these techniques had not been implemented in a similar way."   Id. at 1318.   The court noted that "implementing a well-known technique with particular devices in a specific combination . . . can be inventive," as plaintiff had specifically alleged its particular implementation to be.   Id.   The Circuit thus concluded that plaintiff had "sufficiently allege[d]" that it had patented "significantly more" than an abstract idea.   Id. at 1319.

Defendant contends that the asserted claims lack an inventive concept sufficient to transform them into patent-eligible claims.   See ECF No. 47 at 36-41.   According to defendant, plaintiff's complaint recites "boilerplate conclusory statements" that are insufficient to state a claim.   Id. at 38 (quotation marks and citation omitted).   Defendant contends that the complaint "fails to identify any technical improvement or inventive concept," id., and instead identifies limitations that are "directed to the abstract idea itself," id. at 39 (emphasis in original), and limitations that are "merely conventional computing components performing their conventional functionality," id. at 40.

Plaintiff in turn asserts that it "makes specific, plausible, factual allegations . . . about why aspects of its claimed inventions recite inventive concepts."   ECF No. 51 at

37.   According to plaintiff, at least three features of its patent are inventive concepts: (1) the use of a parallel to serial converter; (2) the conversion of physiological sounds to electrical signals and then to digital signals; and (3) the display device that permitted "easy operation, customization and modification by the clinician."   Id. at 38.   Plaintiff asserts that defendant "ignores the facts cited in the figures, specifications, claims, and prosecution history of the Asserted Patents" and incorrectly assumes that if a "claimed invention employs a 'conventional' computer component" that fact "render[s] the entire combination of claimed elements patent ineligible."   Id. at 39-40.

In the court's view, plaintiff's complaint does not recite specific, plausible factual allegations "'sufficient to ensure that the patent in practice amounts to significantly more'" than the abstract idea itself.   Alice, 573 U.S. at 217-18 (citing Mayo, 566 U.S. at 73); Cellspin, 927 F.3d at 1318 (citing Alice, 573 U.S. at 217-18).   Plaintiff's complaint repeatedly states that the asserted patents "recite technical improvements and inventive concepts that were not well-understood, routine, or conventional" at the time of the invention.   ECF No. 42 at 6, 10, 16.   This, however, is a conclusory statement of the kind that the court is not bound to accept as fact.   See Am. Bankers Ass'n, 932 F.3d at 1380 (the court is "not required to accept the asserted legal conclusions" in a plaintiff's complaint when assessing a motion to dismiss).   Although plaintiff's statements are followed by tables quoting claim terms and specifications, see e.g., ECF No. 42 at 10-15, quoting or reciting the claims and specifications without additional explanation or "concrete allegations" does not constitute sufficiently specific allegations for the court to find inventiveness, Aatrix Software, 882 F.3d at 1128.

The court must and does make all inferences in plaintiff's favor, see Cary, 552 F.3d at 1376, however, the court cannot infer an inventive concept without specific allegations that are "more than simply label[ing] . . . techniques as inventive," Cellspin, 927 F.3d at 1318.   Plaintiff does not "point[] to evidence suggesting [its] techniques had not been implemented in a similar way," or "in a specific combination" that would rise to the level of inventiveness.   Id.; see also, e.g., ECF No. 42 at 6-9 (quoting claim terms and specifications without making specific allegations), 10-15 (same), 16-26 (same). Plaintiff does not provide context that would demonstrate that its invention is "significantly more" than an abstract idea, Alice, 573 U.S. at 218, or otherwise more than "the application of conventional and well-understood techniques," BSG Tech, 899 F.3d at 1290.   Its complaint quotes the "disadvantages" of the "technology field" that were listed in the patent, ECF No. 42 at 4, without providing additional context or explanation as to how plaintiff's invention applied an inventive concept to overcome the disadvantages. Id. at 4-5; see also Mayo, 566 U.S. at 82 ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable.").

Likewise, in its response, plaintiff states that it alleged inventive concepts were not "generic, conventional computing component[s]," without elaborating or otherwise pointing to facts alleged in the complaint that support that assertion.   ECF No. 51 at 38; see also id. at 39-40.   Without more, the court cannot find that plaintiff has adequately alleged an inventive concept.   See BSG Tech, 899 F.3d at 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

The court thus finds that plaintiff's asserted patents are directed to ineligible subject matter.   See 35 U.S.C. § 101; Alice, 573 U.S. at 216.   As such, plaintiff has failed to state a claim upon which relief can be granted.   See Aatrix Software, 882 F.3d at 1125; Univ. of Fla., 916 F.3d at 1369.

IV.   Conclusion

Although defendant's motion was made on the basis of both RCFC 12(b)(1) and 12(b)(6), the court has found that it has subject-matter jurisdiction over all of plaintiff's claims and thus dismisses plaintiff's complaint on the basis of RCFC 12(b)(6) alone.

Accordingly, for the foregoing reasons:

(1)   Defendant's motion to dismiss, ECF No. 47, is **GRANTED**; and

(2)   The clerk's office is directed to **ENTER** final judgment in defendant's favor, and **DISMISS** plaintiff's second amended complaint, ECF No. 42, with prejudice.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge